**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ATRIUM HEALTH CAROLINAS MEDICAL CENTER**, <br><br> Plaintiff, <br><br> v. <br><br> **ROBERT F. KENNEDY, JR.,** <br> in his official capacity as Secretary of Health and Human Services, <br> Defendant. | Case No. 23-cv-1742 (CRC) |

**MEMORANDUM OPINION**

Plaintiff Atrium Health Carolinas Medical Center ("Atrium"), a hospital in North Carolina, filed three appeals with the Provider Reimbursement Review Board challenging reimbursements it received from the Medicare program. Core to each appeal was the number of days during which the hospital treated low-income patients. Atrium, however, never provided a list of those days or supporting documentation to the Board as required under its rules. Nor did it inform the Board of its purported difficulty obtaining this information from the state of North Carolina until eight years after filing its first appeal. Concluding that Atrium's delay in notifying the Board that it lacked this critical information violated its rules, the Board dismissed Atrium's appeals. For the reasons that follow, the Court will affirm the Board's dismissal, deny Atrium's motion for summary judgment, and grant the government's cross-motion.

**I.    Background**

    A.    Statutory and Regulatory Background

The federal Medicare program reimburses medical providers for services provided to eligible patients. Ne. Hosp. Corp. v. Sebelius, 657 F.3d 1, 2 (D.C. Cir. 2011) (citing 42 U.S.C. § 1395 et seq.). As relevant here, Medicare Part A covers medical services furnished by hospitals

and other institutional care providers.  Id. (citing §§ 1395c to 1395i–5).  Hospitals recover the operating costs of inpatient visits through what is known as the Inpatient Prospective Payment System ("IPPS"), 42 U.S.C. § 1395ww(d); CMS, Inpatient Prospective Payment System, https://www.cms.gov/cms-guide-medical-technology-companies-and-other-interested-parties/payment/ipps.  A hospital's baseline IPPS payment is set using predetermined rates rather than actual costs.  The IPPS then adjusts payment levels based on hospital-specific factors.  See, e.g., id. § 1395ww(d)(5).  Atrium's claim here involves one such adjustment, the Medicare disproportionate share hospital adjustment ("DSH adjustment"), which increases reimbursement payments for hospitals that serve a "significantly disproportionate number of low-income patients[.]"  Id. § 1395ww(d)(5)(F)(i)(I).

The DSH adjustment depends on the hospital's "disproportionate patient percentage," which reflects the percentage of low-income patients served.  See id. § 1395ww(d)(5)(F)(v), (vi).  This percentage is the sum of two fractions, known as the Medicare fraction (or SSI fraction) and the Medicaid fraction.  Cross-Mot. for Summ. J. at 2.  Only the Medicaid fraction is relevant to Atrium's claim here.  Defined as the number of the hospital's patient days of service for which patients were eligible for Medicaid, it uses Medicaid eligibility as a proxy for low income.  See 42 C.F.R. § 413.20;  Cross-Mot. for Summ. J. at 2; CMS, Disproportionate Share Hospital, https://www.cms.gov/medicare/payment/prospective-payment-systems/acute-inpatient-pps/disproportionate-share-hospital-dsh.  It is "calculated to include all inpatient hospital days of service for patients who were eligible on that day for medical assistance under a State Medicaid plan[.]"  Dep't of Health and Hum. Servs. & Health Care Fin. Admin., HCFA Ruling 97-2, at 1, Interpretation of Medicaid Days Included in the Medicare Disproportionate Share Adjustment Calculation (1997).

Providers submit Medicare reimbursement claims to a Medicare contractor, which then determines the appropriate payment in a Notice of Program Reimbursement.  Athens Cmty. Hosp., Inc. v. Schweiker, 743 F.2d 1, 3 (D.C. Cir. 1984).  The provider carries the burden of production of evidence and burden of proof and, as relevant here, must furnish appropriate documentation to substantiate the number of patient days claimed.  42 C.F.R. § 405.1871(a)(3); HCFA Ruling 97-2-4.  Those days that cannot be verified by state records may not be counted for purposes of the adjustment.  Id.

B.  The Provider Reimbursement Review Board

Medicare providers may appeal contractor decisions with an amount in controversy of $10,000 or more to the Provider Reimbursement Review Board ("the Board").  42 U.S.C. § 1395oo(a).  The Board enjoys the "full power and authority to make rules and establish procedures, not inconsistent with" the statute or regulations, "which are necessary or appropriate to carry out" its duties.  42 U.S.C. § 1395oo(e); 42 C.F.R. § 405.1868(a).

Provider appeals must include a "position paper" that "set[s] forth the relevant facts and arguments regarding . . . the merits of the provider's Medicare payment claims for each remaining issue."  42 C.F.R. § 405.1853(b)(2).  The regulations also grant the Board the discretion to require submission of supporting exhibits on a schedule of its choosing.  Id. § 405.1853(b)(3).  The Board's rules lay out this process in more detail, requiring that preliminary and final position papers set out "a fully developed narrative" including the material facts and supporting evidence for each claim on appeal.  U.S. Dep't of Health and Hum. Servs. Provider Reimbursement Rev. Bd., Board Rule 25.1.1; 27.1, 27.2, Provider Reimbursement Review Board Rules (2021).

The Board's rules further direct the parties to "exchange *all* available documentation as exhibits" supporting their position along with their position papers. Board Rule 25.2.1. If a party cannot obtain documents necessary to support its position, it must identify the missing documents and the reason for their absence, note the efforts made to secure them, and indicate when the documents will become available. Board Rule 25.2.2. The rules further cite "requests for information pending with a state Medicaid agency" as "[c]ommon examples of unavailable documentation." Id.

The Centers for Medicare and Medicaid Services ("CMS") rules further provide that:

> If a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order, the Board may— (1) Dismiss the appeal with prejudice; (2) Issue an order requiring the provider to show cause why the Board should not dismiss the appeal; or (3) Take any other remedial action it considers appropriate.

42 C.F.R. § 405.1868(b).

C. Atrium's Appeals

Atrium is a Medicare-participating medical center located in North Carolina.[1] At issue in this case are three appeals filed by Atrium challenging a contractor's calculation of Medicaid eligible days for purposes of the DSH reimbursement.[2] In 2013 and 2014, the contractor issued NPRs for Atrium's 2008, 2009, and 2011 fiscal years. Joint Appendix ("AR") 465, 771, 881. Atrium filed appeals of those NPRs with the Board in March and November 2014 and April

---

[1] Quality Reimbursement Services ("QRS") was Atrium's designated representative in its appeal. AR 12. Accordingly, QRS appears in some of the relevant documentation. For ease of reference, the Court will refer to Atrium and QRS collectively as Atrium.

[2] Atrium initially filed as many as eight issues in each of its three appeals, but the other seven issues have been dismissed or transferred to other group appeals, meaning they are no longer at issue in this appeal. AR 13; see Cross-Mot. for Summ. J. at 7; 42 C.F.R. § 405.1837(b)(1).

2015.  AR 405, 751, 1447.[3]  Pursuant to the Board's rules, the parties timely filed their

preliminary position papers and final position papers.  See AR 56–79, 256–70, 717–723, 1447.

      In its final position paper filed in March 2021, however, Atrium neither listed the number

of Medicaid eligible days in dispute nor explained why that information was unavailable.

Instead, it stated that the "Medicaid eligible days listing" was "being sent under separate cover."

AR 635, 638.  Then, in December 2021, Atrium requested a 180-day postponement of its hearing

date as to each appeal, claiming that it was "finalizing a listing [of Medicaid eligible days] for

submission to the [contractor] but [wa]s experiencing a delay in receiving an eligibility listing by

the State."  Id. at 858.

      Eight years after the first appeal was filed, in May 2022, the contractor moved to dismiss

the appeals because Atrium still had not submitted an eligibility listing or any other information

supporting its request to modify the number of Medicaid eligible days used in its DSH

adjustment.  See, e.g., id. at 38-42.  Responding to the motion to dismiss, Atrium requested

another 180-day hearing postponement and reported that it was having difficulty obtaining the

necessary documents from North Carolina.  AR 31–33.  For the first time, Atrium provided some

details concerning its efforts to obtain the relevant data, noting that it had requested the data in

July 2020 and then followed up in May 2021.  Id.  The Board ultimately dismissed the appeals,

finding that Atrium had not complied with its position-paper requirements.  Id. at 23.  Namely,

Atrium had not filed supporting exhibits, identified any Medicaid eligible days at issue, or timely

explained why that information was unavailable.  Id. at 22–23.

---

[3] The government states that Atrium filed its appeals in December 2013, Cross-Mot. for
Summ. J. at 7, but the record cites it provides do not support that assertion.

Atrium then filed this suit against Secretary of Health and Human Services Xavier Becerra in his official capacity[4] challenging the Board's dismissal of its appeals as arbitrary and capricious under the APA. Both sides have moved for summary judgment. For the reasons that follow, the Court will deny Atrium's motion for summary judgment and grant the agency's cross-motion.

## II.    Legal Standards

At summary judgment, the Court must determine whether the challenged agency action complies with the APA and is supported by the administrative record. Richards v. INS, 554 F.2d 1173, 1177 (D.C. Cir. 1977). Under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Arbitrary and capricious review is "narrow," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), and precludes the Court from "substitut[ing] its judgment for that of the agency," Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Rather, the Court must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation marks omitted). Even if the agency did not fully explain its decision, the Court may uphold it "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (citing Colo. Interstate Gas Co. v. Fed. Power Comm'n, 324 U.S. 581, 595 (1945)). The Court's review is limited to the administrative record, Holy Land Found. for Relief & Dev. v. Ashcroft,

---

[4] Per Fed. R. Civ. P. Rule 25(d), Secretary Becerra's successor, Secretary Robert F. Kennedy, Jr., has been automatically substituted as the defendant in this case.

333 F.3d 156, 160 (D.C. Cir. 2003), and the party challenging an agency's action bears the

burden of proof, <u>City of Olmsted Falls v. FAA</u>, 292 F.3d 261, 271 (D.C. Cir. 2002).

### III.  Analysis

#### A.  <u>Atrium Did Not Comply with the Board's Rules</u>

The Board dismissed Atrium's appeals because it did not comply with the applicable

rules governing the submission of accompanying documentation.  AR 16.  It was well within its

rights to do so.  When Atrium filed each of its appeals, it "did not indicate there were issues with

accessing information underlying the adjustment to its Medicaid eligible days."  <u>Id.</u>  And in its

final position paper dated March 2021, Atrium did not indicate how many Medicaid eligible days

were in dispute, simply promising that this listing would be "sent under separate cover."  <u>Id.</u> at

13, 635.  Only in response to the contractor's motion to dismiss its appeals in May 2022 did

Atrium finally disclose it had experienced problems obtaining the data from the North Carolina

Medicaid program and explain that it had requested an eligibility listing in July 2020 and an

update in May 2021.  <u>Id.</u> at 14–15.

Accordingly, the Board concluded that Atrium's failure to (1) identify any specific

Medicaid eligible days at issue and (2) produce a listing of the days at issue or any supporting

documentation violated the applicable regulations and the Board's own rules.  AR 21.  As noted,

Board rules require the parties to exchange all supporting documentation as exhibits along with

the submission of position papers and explain why any documents remain unavailable.  Board

Rules 24.2; 25.2.2.[5]  Instead of complying, Atrium represented in its final position paper that the

list of eligible days would be sent under separate cover.  AR 21.  But no such listing was ever

---

[5] Although these requirements relate to preliminary position papers, Board Rule 27.2
specifies that the minimum requirements for a final position paper are the same.  AR 16.

received, and Atrium later acknowledged that it had not been able to obtain this data from the state of North Carolina.  AR 31–33.  Accordingly, Atrium violated the Board's rules concerning position papers.

The Board also correctly rejected Atrium's attempt to belatedly "provide information that it should have provided in its final position paper" in its June 2022 hearing postponement request.  AR 22.  Though Atrium finally flagged its difficulty obtaining the relevant data, it did not notify the Board or opposing party of these issues and did not follow up with the North Carolina Medicaid program until almost ten months after its first request.  Id.  Plus, even in this untimely filing, Atrium still did not identify any Medicaid eligible days at issue, explain the alleged problems with the State's database, or identify when those issues began, in violation of Board Rule 25.2.  Id.  Moreover, in support of its claims, Atrium attached an email referencing a completely different provider—calling into question whether it had tried to seek the relevant information at all.  Id.  And to top it off, Atrium waited more than six years to even *begin* the process of identifying potential Medicaid eligible days.  Id.  Accordingly, the Board concluded that Atrium had violated its rules requiring development of the merits and failed to meet its burden of "furnishing data adequate to prove eligibility for each Medicaid patient day claimed." 42 C.F.R. § 412.106(b)(4)(iv); id. at 21–22.[6]

Because Atrium violated the Board's rules, the Board did not act arbitrarily and capriciously by dismissing its appeal.  Novant Health Presbyterian Hosp. v. Kennedy, No. 23-1307 (TJK), 2025 WL 819581, at *5 (D.D.C. Mar. 14, 2025).  Indeed, this case is nearly on all

---

[6] The Board further pointed out that this lengthy delay likely caused some of the difficulties Atrium complained about, as "it is likely that the State had not maintained the 2011 data in its live database" and that the issues experienced were likely attributable to "an archived database."  AR 23.

fours with <u>Novant Health</u>, in which a fellow court in this district affirmed the Board's dismissal of a provider's appeal because it failed to brief the issues with the specificity required by Board Rules.  <u>Id.</u> at *3; <u>see</u> <u>Baylor All Saints Med. Ctr. v. Becerra</u>, No. 4:24-CV-00156-O, 2025 WL 888500, at *4 (N.D. Tex. Mar. 21, 2025) (same).  Other courts, too, have "repeatedly reaffirmed that the Board does not act arbitrarily and capriciously when it dismisses an appeal for failure to comply with procedural rules."  <u>Baylor All Saints Med Ctr., 2025 WL 888500, at *5 (</u>citing <u>Rapid City Reg'l Hosp. v. Sebelius</u>, 681 F. Supp. 2d 56, 60–61 (D.D.C. 2010)).

Atrium does not seriously contest that it violated the Board's procedural rules.  <u>See</u> Opp'n, ECF No. 23, at 3 (acknowledging that the Board "may have indeed followed valid procedural rules" in dismissing Atrium's appeals).  Instead, it spends most of its briefing arguing that obtaining "accurate and reliable Medicaid Eligible patient days from the North Carolina state Medicaid agency is fraught with problems, mistakes, missing historical data and dysfunction[.]"  Mot. for Summ. J. at 12.  However arduous that process may be, it does not change the bottom line.  The Board dismissed the appeals because Atrium did not notify it of these difficulties in its final position paper, represented that it would send data it never had in its possession in the first place, and even in its untimely request for a hearing postponement, did not describe in any specificity the issues it was facing.

Atrium also points to a declaration from one of its representatives attached to its motion for reconsideration of the Board's dismissal "not[ing] the frustrations of the data matching process."  <u>Id.</u> at 11.  This argument is beside the point, too.  The Board did not have this affidavit before it when it made its decision, so the Court cannot consider it.  Indeed, Atrium's entire motion for reconsideration is not properly before the Court, as the Board did not act on it prior to Atrium's filing of this suit.  <u>Id.</u> at 12.  In any event, Atrium's difficulties in obtaining data from

the state do not change the fact that it failed to identify those issues in its position paper in violation of Board rules.

      B.  <u>CMS Was Not Obligated to Assist Atrium in Obtaining the Relevant Data</u>

      Changing tacks, Atrium next argues that CMS had a statutory obligation to help it obtain data from the North Carolina Medicaid agency and that this "critical intervention by the agency and its Board did not occur in this matter[.]"  Mot. for Summ. J. at 18.  First of all, this argument does not go to the Board's conclusion that Atrium violated its procedural rules.  Atrium is mistaken in any event.

      As already noted, the applicable regulations make clear that the hospital carries the burden of furnishing data to support the Medicaid days claimed.  42 C.F.R. § 412.106(b)(4)(iv).  The CMS rule cited by Atrium makes the same point, indicating that while the Secretary should "arrange to furnish to hospitals the data necessary" to compare its records "against the State Medicaid agency's records," "[h]ospitals are currently required under the regulation at § 412.106(b)(4)(iii) to provide the data adequate to prove eligibility for the Medicaid, non-Medicare days."  U.S. Dep't of Health and Hum. Servs., 70 FR 47278-01, at 47438, 2005 WL 191572, Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2006 Rates (2005).

      Moreover, even if the Secretary had some obligation to help providers access state data, any recalcitrance on the state's part would first need to be brought to the Secretary's attention.  Here, as explained, Atrium did not inform the agency of its difficulties in obtaining data from North Carolina until June 2022, eight years after filing its first appeal and only after the contractor had moved to dismiss.

C.  Atrium's Precedent is Inapposite

Atrium attempts to salvage its position by citing two prior Board decisions.  The first,

Danbury Hospital v. Blue Cross BlueShield Ass'n, PRRB Dec. No. 2014-D03, was not attached

to Atrium's briefing and does not appear to be publicly available, so the Court will not consider

it.  See Reply, ECF No.27, at 11.  The second, Barberton Citizens Hospital v. CGS

Administrators, Board Decision No. 2015-D05 (March 19, 2015), available at

https://www.cms.gov/Regulations-and-Guidance/Review- Boards/ PRRBReview/Downloads/

2015D05.pdf, does not help Atrium.  In that case, the hospital established through "evidence in

the record and testimony presented at the hearing" that "there were practical impediments"

preventing it from obtaining information about additional Medicaid eligible days.  Id. at 5.

Unlike here, there was no suggestion that the hospital violated the Board's rules or delayed

alerting CMS to any difficulty it was experiencing in obtaining state-level data.

After filing its reply and opposition to the government's cross-motion, Atrium filed,

without leave of Court, a notice of supplemental authority and supporting argument that was

otherwise inadvertently omitted from its previous briefing papers.  Notice of Supp. Auth., ECF

No. 24.  Atrium did not seek leave to file this supplemental brief, so the Court need not consider

it.

Even if the Court were to consider this supplemental brief, it does not support Atrium's

position.  Atrium first cites a Board decision quoting the Secretary of Health and Human

Services' statement that "it is reasonable to continue to place the burden of furnishing the data

adequate to prove eligibility for each Medicaid patient day claimed for DSH percentage

calculation purposes on hospitals[.]"  HCA DSH-Colorado State Database Group Appeals vs.

Novitas Solutions, Inc., PRRB Dec. No. 2016-D17 (Sept. 12, 2016), available at https://gov-

mirror.org/www.cms.gov/regulations-and-guidance/review-boards/officeattorneyadvisor/oaa-decisions-items/2016-d17.  That accords exactly with the government's position.  Although the Secretary later noted that amendment of the regulation might be required if states ceased voluntarily providing Medicaid eligibility data altogether, there is no indication that is what happened here.[7]  Id. at 13.

> D.  The Board Evidenced No Bias Toward Atrium/QRS

Finally, Atrium argues that the Board dismissed its appeals as "the result of a preconceived bias against Plaintiff's representative, QRS."  Mot. for Summ. J. at 19.  Atrium roots this assertion in one sentence in the Board's decision:  "Further, the Board takes administrative notice that it has made similar dismissal in other cases in which QRS was the designated representative and, notwithstanding, QRS failed to provide the Medicaid eligible days listing with its preliminary position paper."  AR 23.  But this observation does not in any way indicate bias.  The Board simply noted that Atrium's representative, QRS, had failed to comply with Board rules in other cases, leading to dismissal there too.

---

[7] Atrium also cites a Supreme Court decision, Bethesda Hospital Association v. Bowen, 485 U.S. 299 (1988), which clarifies the Board's jurisdiction over appeals after a provider has filed a cost report.  Notice of Supp. Auth. at 3.  As the government explains, neither this case nor the Board decisions citing it bear on Atrium's obligation to apprise the Board of any difficulty obtaining eligibility data.  See Reply at 13–14.

**IV.    Conclusion**

For the foregoing reasons, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion.  A separate Order accompanies this Opinion.

 

 

 

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>July 21, 2025</u>